# COMMONWEALTH for use STRAYER and wife, *against* HANTZ.

A took land at the appraisement in the Orphans' Court, and entered into a recogni-zance with B. as his security, to his co-heirs, of two of whom, C. and J. B. was guardian, A. sold the land so taken to E. another heir, and an agreement was exe-cuted by which E. was to pay the valuation money including A's. share to A. and the heirs, and he executed a mortgage for this purpose. This agreement was signed by .C. who was still a minor, and by B. without stating the character in which he signed. After C. came of age, she brought suit on the recognizance for her share: *held* that she was not barred by this agreement, and that it was not valid.

Infants are only capable of making contracts for necessaries, or of doing those things voluntarily, which by law they might or could be compelled to perform.

When land is taken at the appraisement in the Orphans' Court, and the heir taking it, enters into a recognizance to the other heirs, and takes possession, and holds the same, and receives the rents and profits; and afterwards, the land is sold on judgments obtained for debts due by the decedent; although the heir who took is thereby discharged from the appraised value of the land, it is a defence in equity, and he is bound to pay to each heir his proportion of such rents and profits, and he may be compelled to this by suit on the recognizance.

Where a case stated, omitted to find the amount of such rents and profits, and the court below had rendered judgment for the defendant, this court reversed the judgment and awarded a venire facias.

Intestate died seized of several tracts of land, which were taken at the valua-tion by different heirs, who respectively entered into recognizances, one of them being the administrator, and having a small balance of the personal estate in his hands. Judgments to a large amount, were recovered against the intestate, on which the land was all sold, and after paying these debts, a small balance was paid by the sheriff, to the administrator. *Held* in a suit brought against the heir, who was also the administrator, on his recognizance, that as the balance of the perso n-al estate added to the sum he was bound to pay on the recognizance, fell short of these judgments, he was not so bound to pay it towards those judgments, as that his neglect to do so, would charge him with any loss which occurred on the sher-iff's sale. In such suit on the recognizance, the plaintiff is not entitled to recov-er any proportion of the proceeds of the sheriff's sale paid to the defendant as administrator after satisfying the judgments. The remedy for that is in the Or-phans' Court, which will compel the administrator to charge himself with it.

ERROR to the District Court of York county. The case was a scire facias on a recognizance in the Orphans' Court, for the distribu-tive share of the plaintiff, *Catharine Strayer,* formerly *Catha-rine Hantz,* in the real estate of *Andrew Hantz,* deceased, taken by *John Hantz,* the defendant, at the appraisement. A case was stated in the nature of a special verdict in the cause, in which the following facts were set forth and agreed on.

On the 13th of *November,* 1822, *Andrew Hantz,* died intestate, leaving to survive him, a widow, *Mary,* and the following chil-dren: *John, Jacob, Daniel, Andrew, Philip, Catharine, Joseph,*

*Susan, Mary Ann,* and on the same day letters of administration issued to *John* and *Jacob Hantz.*

The intestate died seized. of the following property in *York* county, which was appraised, and taken at the appraisement in the Orphans' Court: No. 1. the "dwelling and plantation," containing 138 acres, appraised at $4793; 2. "Conn's place," containing 99 acres, appraised at $2897; 3. And another tract, containing 96 acres, appraised at $1910.

The first was taken at the valuation, on the 13th of April, 1823, by *John,* the second by *John Knisely,* guardian of *Philip,* on the 16th December, 1823, and the third on the same day by *Daniel,* each of whom entered into recognizance for their respective shares, *John Hantz* with *John Knisely* as his security. *John Knisely* had been appointed guardian of *Catharine Hantz,* who was a minor, and also guardian of *Joseph.*

On the 14th December, 1827, the following paper was executed: At the time of the execution of it *Catharine* the plaintiff was still in her minority:

"Whereas, *John Hantz* took the part of *Andrew Hantz's* real estate No. 1. at the valuation, and gave his recognizance in court to pay the same; and whereas, *John Hantz* is desirous of selling to *Andrew Hantz* now, we agree that if *John Hantz* sells to *Andrew,* and *Andrew* executes a mortgage on part No. 1. to us, the same as *John* bound himself to us in the court, then, we release the said *John,* and will take *Andrew* and the mortgage. Witness our hands and seals, December 14, 1827.

   *Jacob Hantz,* [L.s.] *Catharine Hantz,* [L.s.]
    *Daniel Hantz,* [L.s.] *Mary Hantz,*    [L.s.]
   *Philip Hantz,* [L.s.] *John Knisely.*"   [L.s.]

On the 10th December, 1827, *John Hantz* conveyed to *Andrew Hantz* in fee, in consideration of $4793, and on the 19th December, 1827, *Andrew Hantz* executed a mortgage to *John, Jacob, Daniel, Philip, Catharine* and *Mary Hantz,* widow, for herself, and as guardian for *Susan* and *Mary Hantz,* and to *Knisely,* guardian of *Joseph Hantz,* conditioned to pay the principal and interest secured by the decree of the Orphans' Court, *and the share of John Hantz in the valuation of No.* 1.; and releasing *John Hantz* from the payment of the share of *Andrew* in the valuation.

On the 28th November, 1827, *John Sharp* recovered judgment against the administrators on a bond of the intestate; and on executions issued on this judgment, the real property of the intestate was sold by the sheriff, January the 5th, 1830, for the following sums: No. 1 for $3050; No. 2 and 3 sold together for $3226: No. 4 for $1090; No. 5 for $1845. No. 4 and 5 had not been taken at the appraisement.

(Commonwealth *v.* Hantz.)

After paying judgments and the debts of the intestate, there remained a balance of $1020, which was paid the administrators by the sheriff.

There was a balance of the personal estate amounting to $1580 in the hands of the administrators. The District Court gave judgment for the defendant, to which the plaintiff took this writ of error.

*Lewis* for the plaintiff in error,

Argued that the plaintiff was certainly entitled to recover something. *J. Hantz* had occupied the land until 1830, and received the rents, issues and profits, and to the amount of her proportion of those rents, issues and profits he should respond to the plaintiff. But besides, he as administrator had the personal estate, and should have applied that to discharge the debts due by the intestate; instead of which he permitted it to be sold on these debts, for a sum which was less than one-half of what he owed, including the sum in his hands as administrator. To the amount of the loss sustained by this failure on his part to do justice, he ought to be made responsible.

The plaintiff at law has a complete and perfect right of action, and the defence relied on by the defendant, the failure of consideration, was a defence in equity, which requires that he who asks equity should do equity. *Share* v. *Anderson*, 7 *Serg. & Rawle*, 63. *Poke* v. *Kelley*, 13 *Serg. & Rawle*, 165. *Watson* v. *Gildy*, 11 *Serg. & Rawle*, 338. *Huber* v. *Burk*, 11 *Id.* 246.

The agreement which had been executed when *John* transferred to *Andrew*, although signed by the plaintiff, would not prevent a recovery, as she was a minor at the time of its execution. This paper, it is true, was signed by *Knisely*, who was the guardian of *Catharine*; but it is a rule in equity that a guardian or trustee shall not take a less security for a greater, nor shall a guardian be permitted to do that which on its face is prejudicial to the ward.

The security here was lessened, if this agreement prevailed, and the mortgage should be considered an execution of it, by the amount of the share of *John* of the valuation, which, by the mortgage, *Andrew* became bound to pay to them, and also, by the discharge of the surety in the recognizance, and it would be manifestly prejudicial to *Catharine* the ward. But *Knisely* signed generally without specifying the character in which he executed the paper; and the truth was, that as *Catharine* was then eighteen years of age, he supposed she was of full age, and he really signed the paper because he was guardian of *Joseph*.

Now if a guardian can discharge a security, it must appear that it was done with that intention; and here it does not appear that it

43

(Commonwealth *v.* Hantz.)

was the intention of the guardian to affect the interest of *Catharine.*

*Durkee & Barnitz* for the defendant,

Contended that the agreement was fair, discovering a manifest intention of substituting *Andrew* for *John*, and that it should be executed. It in no way lessened the security, as *Andrew's* share was extinguished by the transaction, and that equalled *John's.*

There was no available fund in his hands to pay the debts of the intestate; he was but one of the two administrators, and the entire balance if applied could not have prevented a sale of the land. The land itself was rendered unsaleable in the hands of the heir by the impending burden of the debts which ultimately swept it away. Besides, *John* had parted with the land to *Andrew*, and a large amount of debts was contested, and he of course could not have been required to run the hazard of making a payment which might have been contested. They refered to *Groff* v. *Groff*, 14 *Serg. & Rawle*, 181.

The occupation of the property and receiving the rents certainly would not make the defendant accountable on the recognizance, however in some other proceeding, he might be made to account for that. But how could it be estimated? The interest on the recognizance might be, and in this case certainly would be, an unfair estimate. There was no evidence of it; and the court could not, upon a case stated, give judgment for that which was not found. But they contended that this was but a shadow, and must fall with the substance of the recognizance, which was defeated by the defence.

The opinion of the court was delivered by

KENNEDY, J.—The first question which presents itself in this case is, was the execution of the release of *Catharine*, one of the plaintiffs *dum sola*, and under the age of twenty-one years, a discharge of the defendant from his liability to her on the recognizance upon which the scire facias has been sued out? It is proper to note here that *John Knisely*, who was the guardian of this plaintiff at that time, was also surety of the defendant in the recognizance. Under this arrangement the land was not only bound as security to her for her proportion of the valuation money, but the defendant and his surety were both personally bound to her. By the subsequent agreement in pursuance of which the release was given, it is manifest that her security for her proportion of the appraisement of the land was materially lessened, and therefore it could not be for her benefit. Infants are only capable of making contracts for necessaries, such as are considered in law clearly for their advantage,

(Commonwealth *v.* Hantz.)

or of doing those things voluntarily which by law they might and could be compelled to perform.    These, when fairly made and done, will be valid and binding, but generally all contracts of a different or opposite character, will not be regarded as having any binding force or authority whatever upon minors.    I therefore consider her execution and delivery of the release no bar to her claim upon the recognizance.    It appears to be executed by *John Knisely;* but it does not appear from the manner in which he set his name and seal to it, that he intended to execute it as her guardian; nor has he thereby declared for whom he intended to execute it.    He, however, was guardian also at that time for *Joseph Hantz,* the brother of *Catharine* the plaintiff, and equally interested with her in the recognizance, and his name is not to the agreement, may be that he intended to execute for him.    Be that, as it may, I think, under the particular circumstances of this case, it was not competent for him as the guardian of *Catharine,* to bind her or bar her of her right under this recognizance by executing that release.    He was directly interested in extinguishing the recognizance; he was himself bound by it and answerable to *Catharine* his ward for whatever in any event might be coming to her on it.    The law will therefore view any act of his going to discharge this recognizance without an actual receipt of the money due upon it, with extreme jealousy.    In addition to this, it would have been a diminution of the security as well as an attempt to release himself, and a direct violation and abuse of his trust and authority as her guardian, and therefore invalid, and not binding upon her.

It remains in the next place to be considered, whether the land, which formed the consideration for entering into the recognizance, being taken away from the defendant or his assigns by a sheriff's sale, under judgments against the administrators of the intestate for debts owing by him at the time of his decease, ought to exonerate him from all obligation under it.    Before, and at the time that the defendant elected in the Orphans' Court to take this land at its appraisement, and entered into the recognizance, he, the plaintiff, *Catharine* and their brothers and sisters, were the unquestionable proprietors of it in fee simple; holding it subject to the payment of the debts of the intestate, (their ancestor) from whom it descended to them.    Each of them was the owner of an equal undivided ninth part, subject to the widow's claim of dower.    The nature and extent of their respective rights in the land, must have been known and understood by all of them.    The defendant was one of the administrators of the intestate, and must be presumed to have known at least as much, if not more, than the other heirs.    The plaintiff had just the same right to participate in the enjoyment of this estate that the defendant had, and he could not have obtained the pos-

(Commonwealth *v.* Hantz.)

session of her right in it, and continued to enjoy it for any le... of time, without allowing, or at least agreeing to allow her a suitable equivalent for it.    He obtained a right to, and took possession of it, under a decree of the Orphans' Court upon his entering into the recognizance, upon which this suit is founded, binding himself to pay to the plaintiff a fair price for her interest in the land.    Under this decree and stipulation of his, he and others under him, continued to receive and enjoy exclusively all the rents, issues and profits that could be derived from the actual possession and occupation of this land from the 13th of April, 1823, the date of the decree of the Orphans' Court, giving him the land, down to the date of the sheriff's sale, on the 5th of June, 1830—a period of more than seven years.    And although the land itself was taken from him or his assignee, yet the rents, issues and profits received during this time, still remain with him; nor is there any one other than those of the heirs of the intestate, who have not released, who can lay claim to these profits.   Justice and equity would seem to require that he should account and pay over to the plaintiff at least one equal ninth part of the two-thirds of the whole rents, issues and profits of the land from the date of the decree of the Orphans' Court, to the making of the sheriff's deed.  The defendant is bound absolutely and unconditionally by his recognizance to pay to the plaintiff her proportion of the valuation money of the land; but upon principles of equity and good conscience he prays to be relieved from it.  Now no principle is better settled than that he who claims equity must do it himself.  Hence, I say that he has no right to be relieved from the burden of his recognizance, but upon his doing equity to the plaintiff, which requires that he should at least pay over to her one-ninth of the two-thirds of the whole profits, as before mentioned.    I say two-thirds of the nett profits, because the defendant will, if he has not already, have to pay to the widow of the intestate one-third of the interest of the appraisement of the land from the date of his recognizance to the sheriff's sale, which precludes the plaintiffs from claiming more than their one-ninth of the two-thirds of the whole profits.   The annual value of the nett profits of the land is not given in the case stated for the opinion of the court; and although this court must reverse the judgment of the court below, which was entered for the defendant; yet, as the value of the profits is unknown, it cannot render a judgment in favor of the plaintiffs for the sum which they are entitled to recover. This court is not willing upon mere conjecture to say that the interest upon the valuation money may be considered as a fair value of the profits of the land.   They may be more or may be less, and as a state of things has arisen altogether different from that which was

(Commonwealth *v.* Hantz.)

in the contemplation of the parties at the time of giving the recognizance, it is thought that the real value of the nett profits ought to be the measure for ascertaining the sum that the plaintiffs are entitled to recover.    The plaintiffs' counsel claimed more; and alleged as a reason for doing so, that it was owing to the default of the defendant, in not applying the money mentioned in the recognizance to the discharge of the judgments obtained against the estate of the intestate, that the land was taken from him by the sheriff's sale. This reason does not appear to be well founded.    He was one of the administrators, and he and his co-administrator had but $1580 of the assets of the estate in their hands, and this sum, added to all that he was bound to pay by virtue of his recognizance, would still have fallen short greatly of a sum sufficient to pay the judgments, which amounted to more than eight thousand two hundred dollars. There is no equity in saying that he ought to have paid towards discharging these judgments the whole amount of the valuation of the land taken by him; nor yet of the recognizance, but even all that would have been quite insufficient; because the other heirs, or some of them, had taken other lands, being part of the intestate's estate, and were bound to contribute their proportion towards paying these judgments.    They did not even offer to do so, nor had the defendant the power of compelling them.    The defendant was certainly not bound to pay these judgments out of his own private funds, further than his own proportion.    He had nothing like funds sufficient, of the other heirs, in his hands to pay their respective proportions of these debts, and they neglected to furnish what was wanting.    It was a matter in which they were all equally interested and bound each to contribute his proportion.    All seem to have been equally negligent, and the loss if any ought therefore to be borne equally.

It is unnecessary, and I think improper, in this suit, to take into consideration, and to give to the plaintiffs their proportion of the one thousand and twenty dollars, the surplus money which remained in the hands of the sheriff of the moneys arising from the sale of the real estate, and was paid upon the order of the administrators of the intestate.    The plaintiffs have their remedy in the Orphans' Court for this money, and can compel the administrators to charge themselves with and pay it over.

The judgment of the court below is reversed, and for the purpose of having the case settled according to the principles now laid down by this court, a venire facias is awarded.

Judgment reversed, and venire facias awarded.